Case 4:21-cv-03672   Document 112   Filed on 07/31/25 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
July 31, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-03672 |
| ROBERT GANDY, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Securities and Exchange Commission's Motion for Remedies and for Entry of Final Judgments Against Defendants (Dkt. 106). After careful consideration of the motion, the response, the record, and the applicable law, the Court **GRANTS** Plaintiff's motion (Dkt. 106).

### I.     PROCEDURAL BACKGROUND

This matter arises out of alleged violations of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") perpetrated by Defendants Robert Gandy ("Gandy"), Silverback Promotions, LLC ("Silverback"), Clarence Fitchett ("Fitchett"), CF3 Enterprises, LLC ("CF3"), Kathy Givens-Gandy ("Givens-Gandy"), and Billy Chang ("Chang"). (Dkt. 106 at p. 1). Plaintiff Securities and Exchange Commission ("SEC") filed a complaint in this Court alleging that Defendants violated Sections 17(a)(1) and 17(a)(3) of the Securities Act and Section 10(b) of the Exchange Act. (Dkt. 1).

The parties ultimately entered into bifurcated settlements, "consenting to injunctive relief and leaving the issue of monetary remedies to be decided by the Court." (Dkt. 111 at pp. 1 – 2); *see also* (Dkt. 94). These settlements did not contain any admission to the allegations of the complaint. (Dkt. 110 at p. 2). However, Defendants each agreed that "in connection with the [SEC's] motion for disgorgement and/or civil penalty…:

> (a) Defendant will be **precluded from arguing that he did not violate the federal securities laws** as alleged in the Complaint; (b) Defendant may not challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such motion, the **allegations of the Complaint shall be accepted as and deemed true by the Court**; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure."

(Dkt. 94-1 at ps. 4, 11, 20, 35, 41) (emphasis added). This language is included in the Court's judgments against each Defendant. (Dkt. 96 at p. 3); (Dkt. 97 at p. 3); (Dkt. 98 at p. 4); (Dkt. 99 at p. 3); (Dkt. 100 at p. 4); (Dkt. 101 at p. 3).

The SEC now brings its Motion for Remedies and for Entry of Final Judgments Against Defendants, seeking the monetary remedies of disgorgement, prejudgment interest, and civil penalties. (Dkt. 106). As such, according to the agreed bifurcated judgments, the Court must accept the allegations of the complaint as true in its analysis of this motion. The facts as alleged in the complaint are recited below.

## II.   FACTUAL BACKGROUND

"Defendants engaged in two different fraudulent schemes to obtain securities of two penny-stock companies and then to sell those securities into the market." (Dkt. 1 at p. 1).

First, Gandy, Silverback, Fitchett, and CF3 ("CF3 Defendants") created fictitious debts that two companies—Quantum Medical Transport, Inc. ("DRWN") and Macau Capital Investment, Inc. ("MCIM")—purportedly owed to other creditors. (*Id*. at p. 2). The CF3 Defendants then purported to buy these fictitious debts and thereafter filed lawsuits to collect on the debts. *Id*. As part of these lawsuits, the CF3 Defendants "sought court approval of sham settlement agreements that authorized CF3 to be paid with unrestricted shares" in DRWN and MCIM. *Id*. Using the court's approval, the CF3 Defendants deceived a transfer agent into issuing unrestricted shares in the two companies. *Id*. Ultimately, the CF3 Defendants attempted to "deposit the unrestricted shares into its brokerage account, so that it could sell them into the market." *Id*. Yet the brokerage firm refused. *Id*.

Next, Defendants attempted a new scheme: "creating fraudulent backdated convertible promissory notes to repay fictitious debts." *Id*. As explained by the SEC:

> "In a convertible note scheme, the perpetrator relies on a third party to buy the forged and backdated convertible promissory note. The third party converts the note into unrestricted shares of stock of the penny-stock company, sells the shares into the market, and then often times pays the perpetrator with the proceeds from the stock sales. The shares, being converted from an allegedly bona fide debt, are unrestricted. In this way, the perpetrator obtains proceeds from the sale of these shares without having given anything of value for them."

(*Id*. at p. 3). Here, Defendants Givens-Gandy and Chang sold fraudulent backdated promissory notes purportedly issued by DRWN, while the CF3 Defendants sold shares from a convertible note purportedly issued by MCIM. *Id*. These stocks should have been restricted from sale because the underlying debts were fictious. *Id*. Most of the proceeds

from these sales were then transferred to "bank accounts for Silverback, controlled by Gandy, and CF3, controlled by Fitchett." *Id*.

### III.   LEGAL STANDARD

#### A.   Disgorgement

Disgorgement of ill-gotten gains has long been part of "equity jurisprudence." *SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022). The Court is authorized to order either legal or equitable disgorgement that does not exceed a wrongdoer's net profits and is awarded for victims. 15 U.S.C. § 78u(d)(7); *id.* § 78u(d)(5); *Liu v. SEC*, 591 U.S. 71, 75 (2020); *Hallam*, 42 F.4th at 327. A remedy that compels the wrongdoer to pay more than his profits from the wrongdoing is impermissible. *Liu*, 591 U.S. at 79-80, 85.

#### B.   Prejudgment Interest

"Courts may add prejudgment interest to a disgorgement amount to prevent defendants from benefitting from the use of ill-gotten gains interest-free." *SEC v. Gilman*, Civil Action No. 3:18-CV-1421-L, 2021 U.S. Dist. LEXIS 170649, at *20 (N.D. Tex. Sep. 9, 2021) (citing *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)). An award of prejudgment interest is within the district court's discretion. *Id.* (citing *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 747 (5th Cir. 2004)).

#### C.   Civil Penalty

"Both the Securities Act and the Exchange Act authorize civil penalties in a three-tiered structure." *Hallam*, 42 F.4th at 322 (citing 15 U.S.C. §§ 77t(d), 78u(d)(3)). Both statutes instruct courts to determine the "amount of the penalty . . . in light of the facts and

circumstances." *Id*. "The penalties allowed by each tier are capped by the greater of a fixed amount per violation or 'the gross amount of pecuniary gain' that the violation created for the defendant." *Id*.

"But those provisions set only the maxima and provide courts with little guidance in fixing the amount. Nor [has the Fifth Circuit] explained what factors that court must or may consider." *Id*. Still, a "district court abuses its discretion when it omits a factor 'that should be given significant weight,' relies heavily on an irrelevant factor, or unreasonably balances the relevant factors." *Id*.

## IV. ANALYSIS

The SEC is requesting that the Court order Defendants to pay disgorgement and prejudgment interest, as well as civil penalties. The Court finds that the SEC has carried its burden for disgorgement and appropriately calculated both the disgorgement and prejudgment interest amounts as to each Defendant. Further, the Court holds that the third-tier penalties sought by the SEC are appropriate as to Defendants Gandy, Fitchett, Chang, and Givens-Gandy.

### A. Disgorgement

The Court finds that the SEC has met its burden and demonstrates that it seeks disgorgement only insofar as Defendants were unjustly enriched. The SEC "has the burden reasonably to approximate the defendant's 'unjust enrichment' attributable to the securities

violation." *Hallam*, 42 F.4th at 341 (citing 15 U.S.C. § 78u(d)(3)).[1] This amount may not include "income earned on ill-gotten profits," but it "may include interest." *Id.* (citing *Blatt*, 583 F.2d at 1335). "If the SEC carries that burden, the burden then shifts to the defendant." *Id.* "To rebut the SEC's evidence, the defendant must prove that the requested amount is "unreasonable," for instance, by interrupting the causal chain identified by the SEC." *Id.* (citations omitted).

The SEC has calculated the net profits from Defendants' promissory-note scheme to determine its disgorgement award. The SEC seeks disgorgement as follows: Gandy ($16,000); Gandy/Silverback, joint and several ($40,000); Fitchett/CF3, joint and several ($10,000); Chang ($40,000); Givens-Gandy ($1,598).[2] The Court finds that these amounts are appropriate.

Defendants argue that the SEC has failed to meet its burden because it does not have evidence to prove the alleged violations of the Securities Act and the Exchange Act. (Dkt. 110 at p. 3). Further, Defendants argue that the monetary remedies pursued by the SEC

---

[1] While the Fifth Circuit has recognized a distinction between "legal disgorgement" and "equitable disgorgement," courts apply the same burden-shifting framework to assess claims under either theory. *Hallam*, 42 F.4th 316 at 341.

[2] The SEC seeks to hold certain Defendants jointly and severally liable with another. (Dkt. 106 at p. 3). "'Where two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they may be held jointly and severally liable for the disgorgement of illegally obtained proceeds.'" *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1117 (9th Cir. 2006) (brackets omitted) (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)); *see also SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475-76 (2d Cir. 1996). Here, the Court finds it is appropriate for Gandy/Silverback and Fitchett/CF3 to be held jointly and severally liable—for both disgorgement and prejudgment interest—given the nature of their involvement in the schemes.

exceed the "agreed upon maximum request for civil penalties." (*Id*. at p. 2). The Court is unpersuaded by both arguments.

First, Defendants' response focuses mainly on the SEC's alleged failure to prove the claims being brought under the Securities and Exchange Acts. (Dkt. 110). However, each Defendant, as part of their settlement agreements, agreed not to argue that he or she "did not violate the federal securities laws as alleged in the Complaint" in response to this motion. (Dkt. 94-1). Further, each Defendant agreed that "allegations of the Complaint shall be accepted as and deemed true by the Court" for the purposes of this motion. *Id*. Accordingly, the Court is not persuaded by this argument.

Next, while Defendants claim they were induced to settle based on the SEC's representation of an agreed maximum of monetary remedies it would seek, the Court finds that this claim is without merit. The evidence demonstrates that, during settlement negotiations, the SEC's counsel represented to Defendants that he would "be willing to recommend to the commission something along the lines" of certain monetary amounts. (Dkt. 110-9). This falls short of creating an agreement to maintain certain maximums, especially given that those alleged maximums were not included in any agreed bifurcated judgments presented to the Court. *See* (Dkt. 94).

The Court finds that the SEC has met its burden and accurately calculated the amount of disgorgement as each Defendants' ill-gotten gains. Accordingly, the motion must be granted as to the SEC's request for disgorgement.

B.     **Prejudgment Interest**

The Court finds that Defendants should each be ordered to pay prejudgment interest. "In federal securities cases, courts generally calculate prejudgment interest by applying the interest rate used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." *Gilman*, 2021 U.S. Dist. LEXIS 170649, at *20. Here, the SEC requests prejudgment interest to be paid by Defendants as follows: Gandy ($2,743.85); Gandy/Silverback, joint and several ($6,859.66); Fitchett/CF3, joint and several ($1,714.91); Chang ($6,859.66); Givens-Gandy ($274.05).

The SEC has calculated the prejudgment interest by the terms of the consents and bifurcated judgments and using the appropriate Internal Revenue Service rate. (Dkt. 106 at p. 8). Defendants argue that the prejudgment interest is inappropriate because any disgorgement is unwarranted. (Dkt. 110). The Court disagrees. Given the SEC's proper calculations, the Court holds that prejudgment interest should be awarded as requested as to each defendant. *See* (Dkt. 106 at p. 8).

C. **Civil Penalty**

The Court finds that third-tier civil penalties are appropriate as requested by the SEC. An offense makes a defendant eligible for a third-tier civil penalty if it "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 77t(d)(2)(B); *id.* § 78u(d)(3)(B)(ii). "And it makes a defendant eligible for a third-tier penalty if it also 'resulted in substantial losses or created a significant risk of substantial losses to other persons.'" *Hallam*, 42 F.4th at 322 (citing 15 U.S.C. § 77t(d)(2)(C)(II); *id.* § 78u(d)(3)(B)(iii)(bb)).

The Court may consider, among other factors: (1) the seriousness of the offenses; (2) the Defendant's state of mind; (3) the risk or realization of financial losses created by the conduct; (4) the frequency of the violations; and (5) the Defendant's financial condition. *See id*. at 323. The Fifth Circuit has left "the district court substantial latitude in structuring its decisionmaking process" when determining civil penalties for violations of the Securities and Exchange Acts. *Id*. at 323. The district court has "broad discretion in deciding what [is] relevant to that inquiry and how much weight to give each factor." *Id*. at 324.

The SEC is seeking third-tier civil penalties against Defendants Gandy, Fitchett, Chang, and Givens-Gandy. (Dkt. 106 at p. 3). Again, each of these Defendants have agreed that "the allegations of the Complaint shall be accepted as and deemed true by the Court" for the purposes of this motion. (Dkts. 100, 98, 96, 99). Accordingly, the Court uses these facts to assess the appropriate penalty as to each defendant.

    *i.*    ***Defendant Gandy***

The Court finds that the requested penalty of $230,464 is appropriate as to Gandy. The SEC argues that, "[b]ecause of his status as leader, because he is a recidivist, and because he repurposed his previous promissory-note scheme to the present violations, Gandy not only acted with a higher degree of scienter, but also undertook more egregious conduct." (Dkt. 106 at p. 10). The Court agrees.

Gandy's conduct was egregious and demonstrated scienter. He "created a significant risk of substantial losses to other persons," and his wrongdoing is "recurrent." *Id*. Though

Gandy has not presented evidence of relevant financial condition, the Court finds that the other factors weigh in favor of imposing a third-tier civil penalty against him. Gandy's offense was serious, intentional, and risked great financial loss. These schemes were also repeat violations. Accordingly, the Court holds that a civil penalty of $230,464 is appropriate as to Gandy.

### ii.    Defendant Fitchett

The Court finds that the requested penalty of $20,000 is appropriate as to Fitchett. The Court agrees with the SEC that Fitchett's "fraud was egregious and … involved multiple schemes." (Dkt. 106 at p. 10). Though Fitchett's wrongdoing was not recurrent, like Gandy's, he still participated in multiple schemes to fraudulently introduce millions of shares into the market. *Id*. As such, the Court finds that Fitchett's violation was serious and—as demonstrated by the multiple schemes—conducted with scienter. Further, Fitchett, like Gandy, "created a significant risk of substantial losses to other persons." *Id*. While Fitchett hasn't presented evidence of his relevant financial condition, he has represented to the SEC that he is "in recovery from a heart transplant that took place earlier this year." (*Id*. at pp. 10 – 11). Taking Fitchett's health circumstances into consideration as a financial condition, the Court finds that the factors weigh in favor of a third-tier civil penalty, albeit lower than Gandy's, for Fitchett. Accordingly, the Court holds that the requested $20,000 civil penalty is appropriate as to Fitchett.

### iii.    Defendants Chang and Givens-Gandy

The Court finds that the requested penalty of $20,000 each is appropriate as to Defendants Chang and Givens-Gandy. Unlike with Gandy, "there is no indication" that these defendants have previously engaged in similar or the same wrongdoing. (Dkt. 106 at p. 10). Still, these defendants engaged in egregious conduct that exhibits scienter. Further, the risk of substantial losses to other persons created by Defendants' conduct was significant. Accordingly, the factors weigh in favor of a third-tier penalty, and the Court finds that a civil penalty of $20,000 is appropriate as to each defendant.

## V.   CONCLUSION

The Court finds that disgorgement, prejudgment interest, and civil penalties are all warranted to the extent requested by the SEC. Accordingly, the Court **GRANTS** the SEC's Motion for Remedies and for Entry of Final Judgments Against Defendants (Dkt. 106). The Court **ORDERS** monetary remedies in the following amounts:

- As to Defendant Gandy: $16,000 in disgorgement, $2,743.85 in prejudgment interest, and $230,464 in civil penalties.

- As to Defendants Gandy and Silverback, jointly and severally liable: $40,000 in disgorgement and $6,859.66 in prejudgment interest.

- As to Defendants Fitchett and CF3, jointly and severally liable: $10,000 in disgorgement and $1,714.91 in prejudgment interest.

- As to Defendant Fitchett: $20,000 in civil penalty.

- As to Defendant Chang: $40,000 in disgorgement, $6,859.66 in prejudgment interest, and $20,000 in civil penalty.

- As to Defendant Givens-Gandy: $1,598 in disgorgement, $274.05 in prejudgment interest, and $20,000 in civil penalty.

**THIS IS A FINAL JUDGMENT.**

SIGNED at Houston, Texas on July 31, 2025.

*[signature: George C. Hanks Jr.]*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE